UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stewart L. Roark,                                             Civ. No. 16-173 (PAM/ECW)

                  Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Credit One Bank, N.A.,

                  Defendant.

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the following reasons, Defendant's Motion is granted and Plaintiff's Motion is denied.

**BACKGROUND**

Defendant Credit One Bank is a national bank, and one of its customers, "R.B.," opened a line of credit in 2013. When R.B. opened the line of credit, he provided the bank with his phone number, and agreed to receive calls from the bank at that phone number for a variety of reasons, including collections. Credit One and R.B. communicated via this phone number regarding his monthly payments throughout 2013 and 2014. In September 2015, R.B. fell behind on his payments, and Credit One began calling him. However, the phone number R.B. provided to Credit One had been reassigned to Plaintiff Stewart Roark in May 2015. R.B. did not inform the bank that he had changed phone numbers, and the bank did not know the number was reassigned.

Credit One, through its vendors First Contact LLC and iEnergizer, attempted to reach R.B. via Roark's phone number from September 2015 through December 2015.

During that time, Credit One called Roark's phone number 140 times. 136 of those times, Credit One called without answer did not leave a message. Four times, Credit One left a prerecorded voicemail on Roark's phone, urging him to call the bank and providing its number and hours of operation. During this time, Credit One received four calls from Roark's phone number, although R.B.'s information still populated in the caller I.D. However, every time Roark connected with a Credit One representative, he hung up. In his deposition, Roark stated that he repeatedly hung up because he "didn't want to talk to them." (West Decl. (Docket No. 89) Ex. 2 at 4.) On December 16, 2016, Roark called Credit One's number again and finally informed a representative that he was receiving calls but was not a Credit One customer. Credit One then placed the number on the block/do not call list, and never called Roark again. According to Credit One, "[t]he Bank would have no interest in calling the . . . [n]umber had it known it was reassigned, as the Bank's calls were intended to reach its specific customer (R.B.) and try to communicate with him regarding the monies he owes, and to offer to work with him to bring his account current." (Def.'s Opp'n Mem. at 7.)

Roark brought this lawsuit in January 2016, alleging that Credit One violated the Telephone Consumer Protection Act ("TCPA") by placing auto-dialed calls to his cell phone. Roark also seeks treble damages, arguing that Credit One willfully or knowingly violated the TCPA. Both Roark and Credit One seek summary judgment, disagreeing on whether Credit One's phone systems violate the TCPA.

This Court previously stayed this action pending resolution of ACA International v. FCC, which reviewed the Federal Communication Commission's ("FCC") July 2015

2

Declaratory Ruling and Order regarding the definitions and meanings of the language used in the TCPA. 885 F.3d 687 (D.C. Cir. 2018). That case is resolved, and the D.C. Circuit's holdings guide this Court's analysis.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.    The Autodialing System**

The TCPA prohibits anyone using an automatic telephone dialing system ("ATDS" or "autodialer") from calling or messaging an individual's cellular telephone without that individual's express permission. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an autodialer as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1)(A-B).

In 2015, the FCC ruled that a device's "capacity" includes both its present capabilities and its "potential functionalities" with modifications like software changes. 2015 Declaratory Ruling, 30 FCC Rcd. 7961, 7974 (2015). The FCC has also held that "random or sequential number generator" includes devices that make calls from a list of customers or employees as well as devices that randomly or sequentially generate numbers to dial. See 2003 FCC Ruling, 18 FCC Rcd. 14014, 14092 (2003). In its 2015 Ruling, the Commission reaffirmed the 2003 Ruling and decided that "predictive dialers"—equipment that can dial automatically from a given list of telephone numbers using algorithms to predict when a sales agent will be available—qualify as autodialers under the TCPA. 30 FCC Rcd. at 7972.

In March 2018, the D.C. Circuit determined that the FCC's 2015 Declaratory Ruling and Order "fail[ed] to satisfy the requirement of reasoned decisionmaking." ACA Int'l, 885 F.3d at 703. The court further held that the FCC's interpretation of "capacity" was overbroad, finding that if capacity is defined as a device's potential functionality, then nearly every phone on earth could be considered an autodialer. Id. at 697. Although the court declined to define a bright-line test as to what constitutes an autodialer under the TCPA, the court concluded "that the ruling's reference to 'dialing random or sequential numbers' means generating those numbers and then dialing them." Id. at 702.

Credit One argues that the limited functionality of their phone systems and recent caselaw warrant summary judgment in its favor. Both the Second and Third Circuit Courts of Appeals have held that the proper inquiry is whether a device has the present capacity to function as an autodialer, not whether it could be modified to function as one. King v.

Time Warner Cable Inc., 894 F.3d 473, 481 (2nd Cir. 2018); Dominguez v. Yahoo, Inc., 894 F.3d 116, 121 (3rd Cir. 2018). The Dominguez case also agreed with the D.C. Circuit's interpretation of "random or sequential number generator," holding that a dialing system is only an autodialer if it can generate random or sequential numbers to dial. Dominguez, 894 F.3d at 121.

Roark argues that FCC rulings from 2003 and 2008, which held that predictive dialers constitute autodialers for purposes of the TCPA, should still apply even though the D.C. Circuit has invalidated the FCC's 2015 ruling. Roark also relies on a Ninth Circuit case which held that the language of the TCPA means that any system which has the capacity to "store numbers" is an autodialer, and that generating numbers is not a prerequisite of an autodialing system. See Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1052 (9th Cir. 2018).

Roark is incorrect that ACA Int'l has no bearing on previous FCC rulings that determined that predictive dialing systems are autodialers. The D.C. Circuit in fact rejected this very argument. "According to the [FCC], because there was no timely appeal from [the 2003 and 2008 rulings], it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones. We disagree." ACA Int'l, 885 F.3d at 701.

Here, there is no question that the devices used by Credit One's agents are predictive dialing systems. However, in the wake of ACA Int'l, predictive dialing systems are no longer always considered autodialers under the TCPA. Rather, the correct inquiry is whether a device can generate numbers to dial either randomly or sequentially. Credit

5

One's "limited understanding of the proprietary dialing systems employed by the vendors is that none of those systems has the actual capability of randomly/sequentially generating numbers to dial" (Meek Decl. (Docket No. 88) at 6 ¶ 31), and "the vendors have worked diligently to ensure that their dialing systems do not have such capabilities . . . ." (Id. at ¶ 32.)

Roark has provided little evidence regarding the specifics of Credit One's dialing systems and has not argued that the systems have either the present or future ability to generate numbers to call. Roark instead urges this Court to follow the Ninth Circuit decision mentioned above. See generally Marks, 904 F.3d 1041. This Court, however, finds the decisions of the D.C., Second, and Third Circuits more persuasive.

In sum, Roark has failed to show that there is a genuine issue of material fact regarding the required functionality of Credit One's dialing system. Credit One asserts that the systems it uses do not have the present capability to generate random or sequential numbers to dial, and Roark has offered nothing to rebut that claim.

**B.      The Voicemails**

The TCPA makes it unlawful to use an artificial or prerecorded voice to place a call to a cell number without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The FCC has interpreted the statutory term "called party" as the current subscriber of the cell number and not the intended recipient of the call. The decision in ACA Int'l, however, invalidated a portion of the FCC ruling that allowed for a one-call "safe harbor" rule for reassigned numbers and "set aside the Commission's treatment of reassigned numbers as a whole." 885 F.3d at 708-09. To determine whether there has been

a violation of this section of the TCPA under current authority, the Court must consider the reasonableness of the caller's reliance on a prior number holder's express consent.

Credit One had express consent from R.B. to call him at the number he provided, including consent to call him with prerecorded messages. Credit One had no reason to know that the phone number had been reassigned because they received no notice from Roark and the caller I.D. for the number still populated with R.B.'s information. It was reasonable for Credit One to rely on R.B.'s prior express consent to call his number, and therefore summary judgment on this issue is proper.

**C.    Treble Damages**

Roark claims that Credit One "willfully or knowingly violated" the TCPA and therefore he is entitled "to an amount equal to not more than" $1,500 per call. 47 U.S.C. § 227(b)(3)(C). Because Credit One did not violate the TCPA, this issue is moot.

**CONCLUSION**

Credit One's predictive dialing systems do not violate the TCPA because there is no evidence in the record that they are presently used to generate and dial random or sequential numbers. Therefore, there is no genuine issue of material fact.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Summary Judgment (Docket No. 83) is **DENIED**; and
2. Defendant's Motion for Summary Judgment (Docket No. 81) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 13, 2018              *s/ Paul A. Magnuson*
                                        Paul A. Magnuson
                                        United States District Court Judge